No. 13-1374

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DICKENSON-RUSSELL COAL CO., LLC
Petitioner,

v.

FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION,

and

SECRETARY OF LABOR, MINE SAFETY AND HEALTH
ADMINISTRATION (MSHA)

Respondents.

**On Petition for Review of the Decision by an Administrative Law Judge of the
Federal Mine Safety and Health Review Commission Issued January 16, 2013**

## REPLY BRIEF OF PETITIONER DICKENSON-RUSSELL COAL CO.,
## LLC

Ralph Henry Moore II
Patrick Wayne Dennison
Jackson Kelly PLLC
Three Gateway Center, Suite 1500
401 Liberty Avenue
Pittsburgh, PA 15222
412-434-8055
412-434-8062 (fax)
E-mail Address: hmoore@jacksonkelly.com

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. ii

GLOSSARY ....................................................................................... v

SUMMARY OF ARGUMENT ............................................................ 1

ARGUMENT ...................................................................................... 3

    I.  The Secretary's Position with Respect to Part 50 Reporting is Illogical and Contrary to the Intent of the Regulation .............................. 3

        A.  The Secretary's Plain Language Argument Should be Rejected ........ 4

        B.  The Secretary's Interpretation is Not Entitled to Deference ............. 12

CONCLUSION .................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

A. T. Massey Coal Co., v. Holland, 472 F.3d 148 (4th Cir. 2006).................... 12

Bluestone Coal Corp., 19 FMSHRC 1025 (Rev. Comm. June 1997) ................. 5

Chevron USA v. NRDC, 467 U.S. 837(1984).................................................12

D.H. Blattner & Sons, Inc., v. Sec'y of Labor, 152 F.3d 1102
(9th Cir. 1998)............................................................................................ 7, 13

Ellis v. Liberty Life Assur. Co. of Boston, 394 F.3d 262 (5th Cir. 2004)......... 10

INS v. Cardoza-Fonesca, 480 U.S. 421 (1987).................................................... 13

Jim Walter Res., Inc., 28 FMSHRC 983 (Rev. Comm. Dec. 2006)................ 5, 6

Joy Technologies, Inc. v. Secretary of Labor, 99 F.3d 991
(10th Cir. 1996)............................................................................................. 13

Nat'l Indus. Sands Ass'n v. Marshall, 601 F.2d 689 (3d Cir. 1979) ............. 7, 13

Nat'l R.R. Passenger Corp. v. Boston & Maine Corp., 503 U.S. 407 (1992) ..... 6

Old Dominion Power Co. v. Donovan, 772 F.2d 92 (4th Cir. 1985)............. 7, 13

Pauley v. BethEnergy Mines, Inc., 501 U.S. 680 (1991).................................... 12

Peabody Coal Co., 18 FMSHRC 686 (Rev. Comm. May 1996),
aff'd, 111 F.3d 963 (D.C. Cir. 1997); .................................................................. 5

Sec'y of Labor ex rel. Bushnell v. Cannelton Indus., Inc., 867 F.2d 1432
(D.C. Cir. 1989) .............................................................................................12

Secretary of Labor v. Twentymile Coal Co., 456 F.3d 151 (D.C. Cir. 2006)....... 9

Speed Mining, Inc. v. FMSHRC, 528 F.3d 310 (4th Cir. 2008) ........................... 9

Twentymile Coal Co., 30 FMSHRC 736 (Rev. Comm. Aug. 2008).................... 5

Watt v. Alaska, 451 U.S. 259 (1981) ........................................................... 12,13

Wolf Run Mining Co., 659 F.3d 1197 (D.C. Cir. 2011).............................. 12

**United States Code**

Federal Mine Safety and Health Act of 1977, 30 U.S.C. §§ 801 et seq.

30 U.S.C. § 802(d) ................................................................7

**Regulations**

30 C.F.R. Part 50.................................... 3, 4, 5, 6, 8, 9, 13, 14

30 C.F.R. § 50.2(c)(1) .................................................... 4, 5, 7

30 C.F.R. § 50.20 .................................... 1, 3, 5, 12, 13, 14

30 C.F.R. § 50.20(a) ..................................................... 3, 4

30 C.F.R. §50.20-4(c)........................................................ 8

# GLOSSARY

The following abbreviations and acronyms are used in this brief:

ALJ:  Administrative Law Judge Jerold Feldman

Bates: Bates Contracting and Construction, Inc.

Commission:  Federal Mine Safety and Health Review Commission

JA:  Designates references to the Joint Appendix

Mine Act or Act:  The Federal Mine Health and Safety Act of 1977, 30 U.S.C. § 801 et seq.

MSHA:  Mine Safety and Health Administration

1969 Act:  Federal Coal Mine Health and Safety Act of 1969, P.L. 91-173 (Dec. 30, 1969)

Review Commission:  Federal Mine Safety and Health Review Commission

The Secretary:  Secretary of Labor, Mine Safety and Health Administration

## SUMMARY OF ARGUMENT

Dickenson-Russell seeks the reversal of the ALJ's holding that it violated 30 C.F.R. § 50.20. Both Dickenson-Russell and Bates are operators as defined by Section 3 of the Mine Act. Dickenson-Russell operates the mine, and Bates, as a contractor, performs services at the mine by supplying miners. The only reasonable construction of Section 50.20 is that an injury must be reported by one or the other operator, not both. There is nothing in the regulation that requires dual reporting. One report of an injury satisfies the notification goals of the Mine Act. Moreover, there is nothing in the regulation that prevents Dickenson-Russell from requiring its contractor to report injuries to its employees, as the contractor is also an operator. The ALJ concluded that the definition of operator in 30 C.F.R. §50.2(c)(1) controlled the outcome rather than the definition in Section 3 of the Act. Such conclusion was incorrect and was apparently caused by the concurrence of the adoption of 30 C.F.R. Part 50 under the Federal Coal Mine Health and Safety Act of 1969 just as the 1977 Act was about to go into effect.

Both the ALJ's and the Secretary's interpretations are unreasonable. The ALJ's is inconsistent with the language of the Act defining "operator" as including independent contractors such as Bates. It is also unreasonable because it eliminates any requirement that independent contractors report injuries to their employees. The Secretary's interpretation is also unreasonable because it requires

the production operator to report an injury even when it has already been reported by the independent contractor.

# ARGUMENT

## I.    The Secretary's Position with Respect to Part 50 Reporting is Illogical and Contrary to the Intent of the Regulation

This case involves the reporting of an injury to MSHA pursuant to the regulation set forth in 50.20(a). The injury was reported in a timely manner and the report contained complete and accurate information (JA 23).[1] The employer operator of the injured miner, Bates, and the owner-operator of the Roaring Fork No. 4 Mine, Dickenson-Russell, were both identified on the 7000-1 form submitted by Bates by their specific MSHA identification numbers despite having received timely, complete and accurate information pertaining to the injury, MSHA issued a citation to Dickenson-Russell for not submitting a duplicate 7000-1 form (JA 24-25) and required reference to Bates as the actual employer to be removed. The Secretary argues that the language of Section 50.20 is plain and that the terms, "each operator," in Section 50.20(a) mean "every one of two or more" (SB 13-16, 19-22). Based on her interpretation of such language, the Secretary argues that Dickenson-Russell had a distinct duty to report irrespective of whether Bates reported the injury (SB 19-22). The Secretary argues that the issue of whether Bates is an operator does not matter, only that Dickenson-Russell was required to

---

[1]    This matter was decided upon summary decision. References to the Secretary's Exhibits, Dickenson-Russell's Exhibits and the Stipulations are to the Joint Appendix. References to the ALJ's decision are to the decision in the Joint Appendix. References to the Secretary's brief are designated "SB" and references to Dickenson-Russell's initial brief are designated "DB."

3

report (SB 22).  The Secretary's argument, however, like that of the ALJ's, is contrary to the regulatory scheme of Part 50 in that it subverts the intent of the standard, which is to report injuries in an accurate manner, and interjects a redundant requirement not contemplated by or rationally related to the regulation. His arguments, which he attempts to justify with hypothetical concerns regarding injury reporting, are unfounded and result in redundant and potentially inaccurate reporting.  Moreover, the Secretary argues in favor of deference without addressing his illogical and unreasonable approach to injury reporting.    His proposed interpretation of Part 50, which was also rejected by the ALJ, should be rejected here.

### A.  The Secretary's Plain Language Argument Should be Rejected.

This case is not as simple as the Secretary would suggest (SB 19).  The Secretary's position that the language of Part 50.20(a) is plain and that the terms, "each operator," mean "every one of two or more" is undercut by the fact that there are currently three different interpretations of the regulation – Dickenson-Russell's, the ALJ's and the Secretary's – all of which advance a different understanding of "each operator" under Part 50 (SB 13-16, 19-22).

Contrary to the Secretary's position, the ALJ held that the Part 50 reporting obligations attach only to a production operator and not to every operator (JA 74). In so doing, the ALJ relied on the definition of "operator" in 30 C.F.R. §50.2(c)(1)

4

which defines an "operator" as "[a]ny owner, lessee, or other person who operators, controls, or supervises a coal mine." The ALJ held that under this definition of operator in Section 50.2(c)(1), Bates was not an operator for the purposes of reporting injuries (JA 74). Thus, according to the ALJ, no contractor or independent contractor would <u>ever</u> have the responsibility to report an injury pursuant to Part 50; only the production operator would have that responsibility.

The Secretary, conversely, argues that the language of "each operator" in Section 50.20 mandates reporting of injuries by every "operator," not just the production operator (SB 19-22). She argues that the word "each" is synonymous with "every" and that such interpretation furthers the purpose of the Mine Act by ensuring the accurate reporting of injuries (SB 20, 23-24). The Secretary's interpretation, like that of the ALJ's, fails and should be rejected.

A close examination of the Secretary's argument that "each" equals "every" reveals that his assertion that the language is plain is misplaced. Typically in interpreting a standard or regulation, the ordinary meaning of words is used and the Commission has held that in the absence of a regulatory definition of a word the ordinary meaning of that word should be applied. See <u>Bluestone Coal Corp.</u>, 19 FMSHRC 1025, 1029 (Rev. Comm. June 1997); <u>Peabody Coal Co.</u>, 18 FMSHRC 686, 690 (Rev. Comm. May 1996), aff'd, 111 F.3d 963 (D.C. Cir. 1997); <u>Twentymile Coal Co.</u>, 30 FMSHRC 736, 750 (Rev. Comm. Aug. 2008) (citing <u>Jim</u>

Walter Res., Inc., 28 FMSHRC 983, 987-88 (Rev. Comm. Dec. 2006)). But where the existence of alternative dictionary definitions of a word, "each making some sense under the statute itself indicates that the statute is open to interpretation and the word is ambiguous as between the two meanings". Nat'l R.R. Passenger Corp. v. Boston & Maine Corp., 503 U.S. 407, 418 (1992).

The word "each" in the context of Part 50 grammatically functions as a determiner.[2] The determiner "each" is not necessarily synonymous with "every" and is synonymous with many such quantifiers including "a bit, a little, all, each and every, either..." (emphasis added). See http://thesaurus.com/browse/each.

Moreover the Secretary recognizes that there are differing definitions of the term "operator," and his argument ignores the ambiguity of its usage with the term "each" (JA 74; DB 12-13; SB 21-22). The Secretary argues instead that whether Bates would also be an "operator" is not relevant and that "it is not necessary to determine whether Bates Contracting met the regulatory definition of 'operator'..." (SB 22). The disputed application of the term "operator," is, however, relevant as it directly addresses whether the language is plain as well as the meaning of "each operator."

---

[2]   A determiner is a word (as an article, possessive, demonstrative, or quantifier) that makes specific the denotation of a noun phrase. See http://www.merriam-webster.com/dictionary/determiner

Both Dickenson-Russell and Bates are "operators" as defined by Section 3 of the Act. 30 U.S.C. §802(d) (DB 11). Dickenson-Russell operates the mine and Bates, as a contractor, performs services at the mine by providing personnel (DB 11). Section 3 of the Mine Act defines "operator" as "any owner, lessee, or other person who operates, controls or supervises a coal or other mine <u>or any independent contractor performing services</u> or construction at the mine." 30 U.S.C. § 802(d) (emphasis added) (DB 10). Instead of relying on the definition of operator in Section 3, the ALJ incorrectly relied on the definition of operator in Section 50.2(c)(1) concluding that Bates was not an operator for the purposes of reporting injuries (JA 74).

The Secretary's reliance on <u>D.H. Blattner & Sons, Inc., v. Sec'y of Labor</u>, 152 F.3d 1102 (9th Cir. 1998) and <u>Nat'l Indus. Sands Ass'n v. Marshall</u>, 601 F.2d 689 (3d Cir. 1979), in support of his position that "each operator" means "every operator" illustrates the inconsistent and contradictory application of the terms "each operator." <u>D.H. Blattner & Sons, Inc.</u>, and <u>National Sands</u> both address the definition of "operator." <u>National Indus. Sand Ass'n v. Marshall</u>, 601 F.2d at 704–06 (Finding that only certain independent contractors performing services at a mine were operators); <u>See also</u> <u>Old Dominion Power Co. v. Donovan</u>, 772 F.2d 92 (4th Cir. 1985); <u>D.H. Blattner & Sons, Inc., v. Sec'y of Labor</u>, 152 F.3d at 1109 (Holding that any independent contractor who "operates, controls or supervises"

was operator). Yet, the Secretary here curiously accepts the ALJ's reliance on the Part 50 definition of operator rather than the one in the Act (SB 22, n.1). Such definition of operator would also seem to contradict the Secretary's position that there can be multiple operators and that the terms "each operator" mean all operators.

As discussed in Dickenson-Russell's initial Brief, the regulatory scheme and an analysis of the development of the Part 50 rule to include independent contractors indicate that Dickenson-Russell's definition of operator should control (DB 14-17). The Secretary argues that such regulatory analysis is not inconsistent with his redundant Part 50 reporting requirement (SB 27). The Secretary argues that the deletion of the express provision for operators to report contractor injuries in the rule when it was promulgated was only done because "the Mine Act already permitted the agency to 'hold extraction operators, or contractors, or both responsible for compliance with Part 50'" (SB 27-28). But this statement in the regulatory history does not indicate that multiple operators are responsible for reporting the same injury as argued by the Secretary.[3] It simply reiterates that MSHA may issue citations to both the independent contractor and to the operator

---

[3]     Section 50.20-4(c) appears to indicate that contrary to both the ALJ's and Secretary's contention, the entity submitting a 7000-1 form need not even be an operator, but only a "mining company." 30 C.F.R. §50.20-4(c).

for a single violation of Part 50.[4]   If no one, including Bates, reported the injury Dickenson-Russell could potentially be held liable.   Dickenson-Russell was not attempting to "exonerate itself from its statutory responsibility for the safety and health of miners merely by establishing a private contractual relationship." Speed Mining, Inc. v. FMSHRC, 528 F.3d 310, 315 (4th Cir. 2008).   No violation existed because the injury was properly reported by Bates.

The Secretary's interpretation of the so-called plain language, like that of the ALJ's decision, also leads to an unreasonable and absurd result.   The Secretary's interpretation mandates reporting from every operator irrespective of knowledge or involvement with the injury and supervision of employees.   There are at least four contractor operators who have been cited by MSHA while working at Dickenson-Russell's Roaring Fork No. 4 Mine.[5]   Other mines have many more contractors.   The Secretary's interpretation places the same obligation on all the multiple operators, i.e., "each" operator, at one site.   Such interpretation leads to absurd

---

[4]     The Secretary has previously argued that she has the authority to cite a mine operator, its independent contractor, or both for violations of the Mine Act. In doing so she cited this Court's decision in Speed Mining v. FMSHRC, 528 F.3d 310 (4th Cir. 2008) and Secretary of Labor v. Twentymile Coal Co., 456 F.3d 151 (D.C. Cir. 2006).   Those cases have no applicability here because they involved violations by a contractor for which the production operator was also cited.   Here the Secretary is arguing that she has the authority to cite a production operator even if no violation existed.

[5]     Information available pertaining to contractor operators at Roaring Fork No. 4 mine available at http://www.msha.gov.

results.   Although the Secretary has not limited the terms "each operator," he recognizes that "there may be multiple 'operators' at a single mine…" (SB 8) He cannot, therefore, limit the reporting obligation because he has defined "each" as "every."  "Every" means "all."  See Ellis v. Liberty Life Assur. Co. of Boston, 394 F.3d 262, 270 (5th Cir. 2004).  Accepting the Secretary's interpretation of "each operator" as meaning "every operator" would require all such contractors to report the injury to Bates' employee, or vice versa, despite having no connection whatsoever to Bates, the employee or the injury.

The Secretary's interpretation of the reporting requirement also does not comport with how MSHA approached this case.  Not every operator at Roaring Fork No. 4 mine was required at the time by the Secretary to report the injury in this case.  Only Bates and eventually Dickenson-Russell reported the injury and only Dickenson-Russell was cited for not initially reporting.  The fact that there were other contractor operators at Roaring Fork No. 4 mine that were not required to report the injury undercuts the Secretary's interpretation of "each operator" as being "every" operator.

The Secretary's argument also fails to further the intent of the reporting requirement which is to, as the Secretary suggests, ensure accurate reporting of injuries sustained by miners (SB 23-25).  To the contrary, it was Dickenson-Russell's agreed upon understanding with Bates that ensured the injury was

reported in a timely and accurate manner because Bates had the accurate knowledge pertaining to the injured employee. Requiring every operator to report the injury irrespective of involvement or knowledge would surely lead to an increase in inaccuracies and/or delayed reporting. As stated in Dickenson-Russell's initial Brief, the miner's contractor employer only, through the workers' compensation system, has access to the information as to medical treatment and/or length of disability (DB 20-21). It also has ready access to information required by MSHA's form such as employment experience.

Moreover and as discussed above, none of the purported concerns provided by the Secretary to justify her redundant reporting was present in this case. There was no unreported injury; there was no confusion as to whom was required to file the 7000-1; and the form was accurate (JA 23; SB 23-24). The initial 7000-1 form identified the location of the injury as the Roaring Fork No. 4 Mine and included the MSHA ID number for the mine, as well as the contractor ID number for Bates (JA 23). The same substantive information was submitted first by Bates and then by Dickenson-Russell except that MSHA had Dickenson-Russell delete the reference to Bates (JA 23, 28). Contrary to the Secretary's assertion (SB 24-25), Dickenson-Russell's president was not merely "opining" that the initial 7000-1 form provided adequate information; rather, he detailed precisely the facts as they

existed in this case. The injury was properly reported and the Secretary's argument to the contrary must be rejected.

**B.      The Secretary's Interpretation is Not Entitled to Deference.**

The Secretary's argument that her interpretation is entitled to deference is not persuasive. And since the terms of Section 50.20 are not plain the Secretary must prove her interpretation is reasonable. See, e.g., Wolf Run Mining Co., 659 F.3d 1197, 1200-01(D.C. Cir. 2011); Sec'y of Labor ex rel. Bushnell v. Cannelton Indus., Inc., 867 F.2d 1432, 1435 (D.C. Cir. 1989) (quoting Chevron USA v. NRDC, 467 U.S. 837, 843 (1984)). A Chevron Step-two analysis focuses on whether an agency's interpretation is reasonable when the regulation is considered ambiguous. Neither the Secretary's nor the ALJ's interpretation is reasonable. The implication of the ALJ's decision is that no contractor on mine site needs to report injuries under Section 50.20, while the Secretary's would require every contractor to report injuries. The Secretary is requiring redundant reporting of injuries and as stated above, she is requiring every operator to report injuries irrespective of their knowledge or involvement. Such approach is not reasonable.

Moreover, the case for deference is less compelling with respect to agency positions that are inconsistent. A. T. Massey Coal Co., v. Holland, 472 F.3d 148, 170 (4th Cir. 2006) citing, Pauley v. BethEnergy Mines, Inc., 501 U.S. 680 (1991) and Watt v. Alaska, 451 U.S. 259, 272–73 (1981) (noting that inconsistent

interpretations garner "considerably less deference"); See also; <u>INS v. Cardoza-Fonesca</u>, 480 U.S. 421, 446 (1987). And as discussed above, the Secretary's position as to the definition and scope of "operator" appears to be inconsistent. <u>See Joy Technologies, Inc. v. Secretary of Labor</u>, 99 F.3d 991, 999 (10th Cir. 1996)(The Secretary urging the Court to expand the definition of operator); <u>National Indus. Sands Ass'n</u>, 601 F.2d at 704–06; <u>Old Dominion Power Co.</u>, 772 F.2d 92; <u>D.H. Blattner & Sons, Inc.</u>, 152 F.3d at 1109.

The Secretary's position is also inconsistent with its own Program Policy Manual, which indicates that contractor and production operator may coordinate between the two entities "to avoid duplication" as to who reports an injury:

> Independent contractors working at mines are required to comply with all provisions of Part 50 pertaining to their employees. In order to assure accurate reporting and recordkeeping and <u>to avoid duplication, it is important that production-operators and their independent contractors carefully coordinate their Part 50 responsibilities.</u> (JA 65) (emphasis added).

As stated in Dickenson-Russell's initial Brief, it is clear from this portion of the Manual that MSHA does not interpret "each operator" in Section 50.20 as meaning both or multiple operators (DB 18). The Secretary attempts to undercut the significance of this provision in the Manual by suggesting that coordination amongst operators is essential to minimize "the already slight duplication of effort" (SB 29). But the PPM does not state who is required to report and clearly states that the goal of coordination amongst operators is "to avoid duplication" not just

minimize it. Avoiding duplication suggests that only one entity is required to submit a form but clearly that entity could be the contractor operator since they "are required to comply with all provisions of Part 50 pertaining to their employees." (emphasis added).[6]

Dickenson-Russell's position is a logical and commonsense application of the Part 50 reporting requirements and as stated in its initial Brief, such position is consistent with MSHA's PPM and the 7000-1 form (DB 18). The Secretary, like the ALJ, ignores the facts of the case and contemplates unsupported hypothetical concerns regarding reporting injuries at mines. The ALJ and the Secretary both ignore the regulatory scheme and the development of the rule and reach contradictory conclusions that do not further the intent of the rule. And for those reasons the Secretary's position should be rejected, the decision should be reversed and the Citation vacated.

## CONCLUSION

Based on the foregoing, it is requested that the ALJ's decision with respect to a finding of a violation of Section 50.20 be reversed and the Secretary's position should be rejected.

---

[6] The Secretary's Program Policy Letter also seems to indicate that only one operator and not every or all operators are to report injuries (JA 30).

Respectfully submitted,


By: /s/ Ralph Henry Moore, II
   Ralph Henry Moore, II
   Patrick W. Dennison
   Jackson Kelly PLLC
   Three Gateway Center, Suite 1500
   401 Liberty Avenue
   Pittsburgh, PA  15222-1000
   412-434-8055
   412-434-8062 fax

   Attorneys for
   Dickenson-Russell Coal Co., LLC

Dated on this 17th day of June, 2013

### Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.     This Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because this Reply Brief contains 3,148 words, excluding the parts of the Brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This Brief complies with the typeface requirements for Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this Brief has been prepared in a proportionally spaced typeface using Microsoft Word for Windows© 2010 in 14-point, Times New Roman font.

3.     This Brief and related attachments, including the addendum, as submitted in digital form, includes identical text as the hard copies filed via overnight courier and has been scanned for viruses using Sophos Endpoint Security and Control, Version 10.0, last updated on 06/17/2013, and, according to the program, are free of viruses.


/s/ Ralph Henry Moore, II

Attorney for Dickenson-Russell Coal Co., LLC

Dated:    June 17, 2013

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that service of Dickenson-Russell Coal Co., LLC's foregoing Reply Brief was made upon the following, by forwarding a true and exact copy thereof via electronic filing (CM/ECF System) and overnight courier this 17th day of June, 2013, addressed as follows:

Samuel Charles Lord
W. Christian Schumann
Counsel for Appellate Litigation
U.S. Dept. of Labor
Office of the Solicitor
1100 Wilson Blvd., Room 2220
Arlington, VA  22209

John T. Sullivan
Federal Mine Safety & Health
Review Commission
601 New Jersey Ave., NW
Suite 9500
Washington, D.C.  20001

/s/Patrick W. Dennison

# ADDENDUM A

## Addendum Containing Statutes and Standards

### 30 CFR § 50.2 (c)

(c) *Operator* means

(1) Any owner, lessee, or other person who operates, controls, or supervises a coal mine; or,

(2) The person, partnership, association, or corporation, or subsidiary of a corporation operating a metal or nonmetal mine, and owning the right to do so, and includes any agent thereof charged with responsibility for the operation of such mine.

### 30 CFR § 50.20-4(c)

(c) Company name. Enter the name of the mining company submitting this report or, if not a company, the operator's name.

### Section 3d of the Act states:

(d) "operator" means any owner, lessee, or other person who operates, controls, or supervises a coal or other mine or the supervision of the miners in a coal or other mine;